UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALI GHAFOURI,<br><br>                       Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, et al.,<br><br>                       Respondents. | Case No.: 3:25-cv-02675-RBM-BLM<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 8 U.S.C. § 2241**<br><br>**[Doc. 1]** |

      On October 8, 2025, Petitioner Ali Ghafouri ("Petitioner") filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") challenging the lawfulness of his detention by United States Immigration and Customs Enforcement ("ICE"). (Doc. 1.) The same day, Petitioner filed a Notice of Motion and Memorandum of Law in Support of a Temporary Restraining Order ("TRO Motion"). (Doc. 3.) The Petition and the TRO Motion seek the same relief—Petitioner's release from detention. Per the Court's Order, Respondents filed a Response in Opposition to Petitioner's Habeas Petition and Application for Temporary Restraining Order ("Response") (Doc. 9) and Petitioner filed a Traverse in Support of Petition for Writ of Habeas Corpus and Reply in Support of Temporary Restraining Order ("Traverse") (Doc. 10).

      For the reasons set forth below, the Petition is **GRANTED**.

# I. BACKGROUND

## A. Factual Background

Petitioner, a native and citizen of Iran, first entered the United States with his family to flee political persecution on October 1, 1990. (Doc. 1 at 3; *see* Doc. 9-2, Ex. 1 at 4.) [1] On October 8, 1999, Petitioner was arrested and subsequently convicted of two drug offenses. (Doc. 9 at 2.) Following his release from criminal custody, Petitioner was detained by ICE on April 1, 2002 and placed in removal proceedings. (*Id.*) Petitioner was released from ICE custody on bond about a month later. (*Id.*) On May 5, 2003, Petitioner was arrested for theft related crimes and transferred back to ICE custody shortly thereafter. (*Id.*) On June 5, 2003, Petitioner was ordered removed from the country. (Doc. 1 at 3; *see* Doc. 9-2 at 9.) After ordered removed, Petitioner remained in ICE detention for approximately seven months. (Doc. 1 at 3.) "[F]irst for about 89 days, and then after his transfer to and from state custody, another 120 days." (*Id.*) On March 29, 2007, Petitioner was arrested for a parole violation and transferred back to ICE custody. (Doc. 9 at 3.)

On May 2, 2007, Petitioner was released from ICE custody under an order of supervision (the "Order of Supervision") because the Government was unable to obtain a travel document for his removal to Iran. (Doc. 1 at 3; Doc. 9 at 3.) Petitioner was again arrested on July 10, 2008 and subsequently convicted for burglary and receiving stolen property. (Doc. 9 at 3.) Following his release from criminal custody, Petitioner was detained by ICE on March 10, 2009. (*Id.*) On June 16, 2009, Petitioner was again released from ICE custody under the Order of Supervision. (*See* Doc. 1, Ex. B at 26–27.)

As of 2009, Petitioner has sustained no further convictions and attended his check-ins with ICE as required under the conditions of his Order of Supervision. (Doc. 1 at 4.) On May 15, 2025, while attending his most recent check-in, Petitioner was re-detained by ICE. (*Id.*) Petitioner was arrested pursuant to a Warrant for Arrest of Alien issued on DHS

---

[1] The Court cites the CM/ECF pagination unless otherwise noted.

Form I-200.  (*See* Doc. 9-2, Ex. 5 at 21.)  The ICE agent who conducted the arrest informed Petitioner that "they had orders to pull in anyone with a felony and an order of supervision." (Doc. 1 at 4 (quoting Doc. 1, Ex. A at 23–25, Declaration of Ali Ghafouri ["Ghafouri Decl."] ¶ 5).)   That same day, Petitioner was shown a Form I-205, Warrant of Removal/Deportation issued on ICE (*see* Doc. 9-2, Ex. 4 at 18–19) as well as a Form I-294, Warning to Alien Ordered Removed or Deported (*see* Doc. 9-2, Ex. 7 at 36).  (Doc. 9 at 13.)  Since his arrest, Petitioner has not been informed of the reasons for his re-detention, met with a deportation officer, been offered an informal interview, or had the opportunity to contest his re-detention.  (*Id*. (quoting Ghafouri Decl. ¶ 5).)

On October 10, 2025, 148 days after Petitioner was arrested and two days after filing this lawsuit, Petitioner was served with a Notice of Revocation of Release stating the following:

> This letter is to inform you that your order of supervision has been revoked, and you will be detained in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time.  This decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case.
>
> ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you.  On June 17, 2004, you were ordered removed to Iran by an authorized U.S. DHS/DOJ official and you were granted a withholding of removal to Iran.  Your case is under current review for removal to an alternate country.
>
> Based on the above, and pursuant to 8 C.F.R. § 241.4 / 8 C.F.R. § 241.13, you are to remain in ICE custody at this time.  You will promptly be afforded an informal interview at which you will be given an opportunity to respond to the reasons for the revocation.  You may submit any evidence or information you wish to be reviewed in support of your release.  If you are not released after the informal interview, you will receive notification of a new review, which will occur within approximately three months of the date of this notice.

(Doc. 9-2, Ex. 8 at 28–29.)  Petitioner currently remains in ICE custody.

B.  **Procedural Background**

On October 8, 2025, Petitioner filed the instant Petition challenging the lawfulness of his ongoing detention against Respondents Kristi Noem, Pamela Bondi, Todd M. Lyons, Jesus Rocha, and Christopher J. LaRose (collectively, "Respondents" or the "Government"). (Doc. 1 at 1.) That same day, Petitioner filed the TRO Motion (Doc. 3) and a Motion for Appointment of Counsel (Doc. 2). On October 16, 2025, the Court issued an Order to Show Cause and Granting Motion for Appointment of Counsel. (Doc. 4.) On October 22, 2025, Respondents filed their Response (Doc. 9) and Petitioner filed the Traverse shortly thereafter (Doc. 10).[2]

## II.  LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III.  DISCUSSION

Petitioner argues his detention violates the regulations set forth in 8 C.F.R. § 241.4(l) and § 241.13(i), as well as the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 1 at 8–17.) In opposition, Respondents argue that Petitioner's claims

---

[2] Respondents assert there is no need for an evidentiary hearing on this matter. (Doc. 9 at 16). Because the relevant facts do not appear to be in dispute, the Court declines to hold an evidentiary hearing. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized by statute").

are jurisdictionally barred under 8 U.S.C. § 1252(g). (Doc. 9 at 5–6.) Respondents also argue Petitioner's detention is constitutional under *Zadvydas*, and that Petitioner has failed to show how any regulatory non-compliance by ICE resulted in prejudice. (*Id.* at 7–15.)

For the reasons discussed below, the Court concludes that ICE failed to comply with the applicable statutory and regulatory provisions in revoking Petitioner's release thereby violating his due process rights.[3] As this Court has an obligation to "determine that [it has] jurisdiction before proceeding to the merits" of any case, it will first address Respondents' jurisdictional arguments. *Lance v. Coffman*, 549 U.S. 437, 439 (2007).

### A. Jurisdiction

Respondents argue the Court lacks jurisdiction to hear this Petition under 8 U.S.C. § 1252(g). (Doc. 9 at 5–6.) This statutory bar against judicial review precludes the Court from exercising jurisdiction over the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen]." 8 U.S.C § 1252(g). The Supreme Court has narrowly interpreted § 1252(g) as applying "only to [those] three discrete actions that the Attorney General may take." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis omitted) (quoting 8 U.S.C. § 1252(g)).

Here, Petitioner does not challenge the legitimacy of his May 2003 order of removal. Rather, Petitioner challenges the legality of his present detention, including his re-detention without notice and an opportunity to respond, which does not require judicial review of ICE's discretionary authority to decide "when" or "whether" to execute a removal order. *See Rauda v. Jennings*, 55 F.4th 773, 777 (9th Cir. 2022) (quoting *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 297 (3d Cir. 2020)). Accordingly, as other courts in this District have found in similar cases, this Court has jurisdiction to consider Petitioner's claims. *See Zadvydas*, 533 U.S. at 687 (confirming 28 U.S.C. § 2241 confers jurisdiction on the federal

---

[3] Having reached this conclusion, the Court need not address Petitioner's remaining arguments.

courts to hear unlawful detention claims brought by immigration detainees who have been ordered removed); *Sanchez v. LaRose*, Case No.: 25-cv-2396-JES-MMP, 2025 WL 2770629, at *2 (S.D. Cal. Sept. 26, 2025); *Rokhfirooz v. LaRose et al.*, Case No.: 25-cv-2053-RSH-VET, 2025 WL 2646165 (S.D. Cal. Sept. 15, 2025); *Palma v. LaRose*, Case No. 3:25-cv-1942-BJC-MMP (S.D. Cal. Aug. 11, 2025), ECF No. 14.

### B.  Due Process

Petitioner challenges his detention as unlawful based on ICE's decision to revoke his release without providing the required opportunity to be heard.  (Doc. 1 at 8–10.) Petitioner's claims therefore implicate the Due Process Clause.  The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V.  Due process rights extend to noncitizens present in the United States, including those subject to final removal orders.  *Zadvydas*, 533 U.S. at 693–94.  The fundamental requirements of due process are that a person be afforded notice and an opportunity to be heard "at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

The detention, and release of noncitizens who have been ordered removed is governed by 8 U.S.C. § 1231.  This statute directs the Attorney General of the United States to effect the removal of a noncitizen from this country "within a period of 90 days," also known as the "removal period."  8 U.S.C. § 1231(a)(1)(A).  It also authorizes the detention of a noncitizen during the removal period.  § 1231(a)(2).  "If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." § 1231(a)(3); *see Zadvydas*, 533 U.S. at 699–700 (explaining a noncitizen must be released after the removal period expires and "removal is no longer reasonably foreseeable" because "continued detention is no longer authorized by statute").  Those regulations, primarily 8 C.F.R. § 241.4 and § 241.13, govern the release and revocation of release of noncitizens who are subject to a final order of removal.  Both regulations were intended "to provide due process protections to [noncitizens] following the removal period as they are

considered for continued detention, release, and then possible revocation of release." *Santamaria Orellana v. Baker*, Civil Action No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025).

While it is unclear from the record which regulation controls, the Court nonetheless finds that ICE failed to comply with the required procedures under both regulations thereby violating Petitioner's due process rights.

### 1. Agency Regulations

Petitioner claims that ICE failed to comply with its own governing regulations because it did not: (1) provide him with notice that his Order of Supervision was revoked; (2) conduct an informal interview or afford Petitioner an opportunity to be heard; and (3) sufficiently demonstrate the changed circumstances that render his removal significantly likely in the reasonably foreseeable future. (Doc. 1 at 4.) Respondents do not meaningfully respond to these arguments. Rather, Respondents argue that "Petitioner has not established prejudice." (Doc. 9 at 12.)

Under 8 C.F.R. § 241.4, release may be revoked when "appropriate to enforce a removal order or to commence removal proceedings against [a noncitizen]." 8 C.F.R. § 241.4(l)(2)(iii). If the noncitizen was released pursuant to § 241.13, release may be revoked under this section if, "on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." § 241.13(i)(2). Both regulations provide that upon revocation of release, the noncitizen "will be notified of the reasons for revocation of his or her release," and will be given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1); § 241.13(i)(3).

In this case, the record before the Court shows that Petitioner was not given any notice of the reasons for his re-detention prior to his arrest or an opportunity to respond to such reasons. Although both regulations require notice "*upon revocation*," ICE did not provide Petitioner with a Notice of Revocation of Release until two days after he filed this

lawsuit—almost *five months* after he was taken into custody. 8 C.F.R. § 241.4(l)(1) (emphasis added); *id.* § 241.13(i)(3). Moreover, as Petitioner notes, the Notice contains an incorrect date that he was ordered removed, indicates he will be removed to an alternate country, and wrongly states that he was subject to withholding of removal. (Doc. 10 at 5; *see* Doc. 9-2, Ex. 8 at 28.) Respondents contend that "[a]t the time of his re-detention for removal, Petitioner was shown by ICE officers a Form I-200, Warrant for Arrest of Alien, and with ICE officers Petitioner signed a Form I-205, Warrant of Removal/Deportation, and [Petitioner was] served a Form I-294, Warning to Alien Ordered Removed or Deported." (Doc. 9 at 13.)[4] However, none of these documents purports to reflect the basis for the revocation of Petitioner's release thus thwarting his ability to contest that action. For example, the Form I-294 "warning" Petitioner that he is "prohibited from . . . being in the United States" directly contradicts his Order of Supervision which permitted Petitioner's release subject to his compliance with certain conditions. (*See* Doc. 9-2, Ex. 7 at 26; Doc. 9-2, Ex. 3 at 11.) Under the circumstances, the Court concludes Petitioner was not provided adequate notice of the reasons for revocation of his release. *See M.S.L. v. Bostock*, Civ. No. 6:25-cv-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) (holding ICE failed to provide the petitioner a timely notice of revocation where it was issued "after nearly a month in detention.").

In the same vein, an informal interview is required "*promptly* after [the noncitizen's] return to Service custody." 8 C.F.R. § 241.4(l)(1) (emphasis added); § 241.13(i)(3). Respondents admit "[i]t is unclear whether Petitioner's conversations with ICE officers to date amount to an informal interview, but even if they do not, the alleged lack of an interview does not entitle Petitioner to release." (Doc. 9 at 13.) Indeed, nothing in the record indicates that Petitioner was provided with an interview in connection with the

---

[4] The Court notes that Petitioner refused to sign the Form I-286 (*see* Doc. 9-2, Ex. 6 at 24) and the Notice of Revocation (*see id.*, Ex. 8 at 29). Whether Petitioner signed the Form I-205 is unclear. (Doc. 9-2, Ex. 4 at 19.)

revocation of his release, let alone a "prompt" interview, or otherwise afforded an opportunity to respond to the reasons for his re-detention. *See Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (finding petitioner was likely to succeed on his unlawful re-detention claim as "there [was] no indication that an informal interview was provided").

Finally, to the extent that Petitioner was subject to 8 C.F.R. § 241.13, the revocation of his release violated those regulations as well. Petitioner claims "[t]here were no 'changed circumstances' supporting a determination that 'there is a significant likelihood that the alien may be removed in the reasonably foreseeable future.'" (Doc. 10 at 5 (quoting 8 C.F.R. § 241.13(i)(2)).) Indeed, Respondents requested travel documents from Iran more than five months ago and have yet to obtain such travel documents. (*See* Doc. 9-1, Declaration of David Townsend ["Townsend Decl."] ¶ 19.) As Respondents admit, Petitioner was released from ICE custody on May 2, 2007 and June 16, 2009 under the Order of Supervision "because ICE was unable to obtain a travel document." (*Id*. ¶¶ 12, 15.) There is no evidence of ICE's most recent decision to revoke Petitioner's release, let alone evidence that ICE determined Petitioner's removal was significantly likely in the reasonably foreseeable future based on any "changed circumstances." *See* 8 C.F.R. § 241.13(i)(2). Accordingly, under any of the potential bases for revocation, the Court finds the Government failed to comply with its own regulations.

### 2. Prejudice

Respondents argue that Petitioner fails to establish he was prejudiced by ICE's noncompliance with the relevant regulations because he knew that he was subject to a final order of removal, that ICE would continue to make efforts to obtain a travel document to execute his removal, and "any challenge that Petitioner would have raised under the regulations would have failed." (Doc. 9 at 12.) Petitioner responds that he does not need to show prejudice, but the alleged violations were nonetheless prejudicial because the relevant regulations protect fundamental due process rights "before being detained indefinitely." (Doc. 10 at 6–7.) The Court agrees.

It is well-established that government agencies are required to follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010) ("It is a well-known maxim that agencies must comply with their own regulations.") (quoting *Ramon–Sepulveda v. INS*, 743 F.2d 1307, 1310 (9th Cir. 1984)). Where there is a regulatory violation, the Court should assess "whether violation of the regulation prejudiced the party involved." *Carnation Co. v. Sec'y of Lab.*, 641 F.2d 801, 804 n.4 (9th Cir. 1981). "But where, as here, 'compliance with the regulation is mandated by the Constitution, prejudice may be presumed.'" *Id.* (quoting *Garcia-Flores*, 17 I. & N. Dec. at 328); *see also United States v. Calderon-Medina*, 591 F.2d 529, 531 (9th Cir. 1979) ("Violation of a regulation renders a deportation unlawful only if the violation prejudiced interests of the [noncitizen] which were protected by the regulation."). Indeed, "[a] court's duty to enforce an agency regulation is most evident when compliance with the regulation is mandated by the Constitution or federal law." *Sanchez v. Barr*, 919 F.3d 1193, 1196 (9th Cir. 2019) (Paez, J., concurring) (quoting *United States v. Caceres*, 440 U.S. 741, 749 (1979)).

As previously noted, § 241.4 and § 241.13 were intended "to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release." *Santamaria Orellana*, 2025 WL 2444087, at *6; *see Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). District courts across the country, including in the Ninth Circuit, "have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." *Rokhfirooz v. Larose*, Case No.: 25-cv-2053-RSH-VET, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025) (granting the petitioner's release where the Government failed to comply with § 241.13); *see Hoac*, 2025 WL 1993771, at *4 (finding petitioner was likely to succeed on his unlawful re-detention claim because "there is no indication that an informal interview was provided"); *Rombot v. Souza*, 296 F.

Supp. 3d 383, 387–88 (D. Mass. 2017) (holding ICE's failures to follow § 241.4's revocation procedures rendered the petitioner's detention unlawful); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 164 (W.D.N.Y. 2025) ("[B]ecause ICE did not follow its own regulations in deciding to redetain [the petitioner], his due process rights were violated, and he is entitled to release.").[5]

 This Court reaches the same conclusion. As previously determined, ICE failed to comply with § 241.4 and § 241.13 when it failed to provide Petitioner with sufficient notice or an opportunity to respond to the reasons for the revocation of his release. In doing so, ICE deprived Petitioner of his due process rights and prejudiced his interests by failing to afford him the procedural safeguards the regulations were designed to protect. *See Diaz v. Wofford*, Case No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *7 (E.D. Cal. Sept. 5, 2025) ("DHS's failure to follow its own procedural regulations may constitute a due process violation."); *M.S.L.*, 2025 WL 2430267, at *11 ("ICE's failure to provide Petitioner with a timely Notice of Revocation or conduct an informal interview until nearly a month after taking [him] into custody is a grave violation of Petitioner's due process rights in that they deprived [him] both of meaningful notice and an opportunity to be heard.").

 Accordingly, the Petition is **GRANTED**. In light of the disposition herein, the Court declines to address the remaining grounds in the Petition for seeking release.

//
//

---

[5] *But see Louangmilith v. Noem*, Case No.: 25-cv-2502-JES-MSB, 2025 WL 288178, at *3–4 (S.D. Cal. Oct. 9, 2025) (denying immigrant-detainee's procedural due process claim without prejudice where the government "obtained travel documents for the petitioner to be removed to his home country."); *Medina v. Noem*, Case No. 25-cv-1768-ABA, 2025 WL 2306274, at *12 (D. Md. Aug. 11, 2025) (denying habeas petition without prejudice because the petitioner had "not pointed to authority showing that the remedy for a violation of [§ 241.4] (if such a violation has occurred) is release from detention.").

## IV.   CONCLUSION

Based on the foregoing reasons, the Petition is **GRANTED**.  Accordingly:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to his preexisting Order of Supervision.

2. Petitioner's TRO Motion (Doc. 12) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

DATE:  November 4, 2025

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE